Of Counsel:
ASHFORD & WRISTON
A Limited Liability Law Partnership LLP

MIRANDA TSAI          8308-0
CONNIE CHOW           8556-0
Alii Place, Suite 1400
1099 Alakea Street
P.O. Box 131
Honolulu, Hawaii 96810
Telephone: (808) 539-0400
Email: mtsai@awlaw.com; cchow@awlaw.com

Attorneys for Secured Creditor
DC SERVICES NA LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>DEAN MARK, SR. and SUZANNE ELIZABETH MARK,<br><br>          Debtors. | ) CASE NO. 09-00121<br>) (Chapter 13)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF SEAN WATRIPONT IN SUPPORT OF OBJECTION TO CONFIRMATION OF PLAN AND OPPOSITION TO DEBTORS' MOTION TO VALUE COLLATERAL; EXHIBITS "A"-"C"**

I, SEAN WATRIPONT, declare as follows:

1. I am the bankruptcy liaison for Secured Creditor DC SERVICES NA LLC ("DC SERVICES"). I am one of the custodians of the books, records and files of DC SERVICES as to those books, records, and files that pertain to loans

620591.01

1

and extensions of credit given to Debtors DEAN MARK, SR. and SUZANNE ELIZABETH MARK ("Debtors") concerning the Vehicle herein. I have personally worked on the books, records and files of DC SERVICES , and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of DC SERVICES on behalf of DC SERVICES , which were made at or about the time of the events recorded, and which are maintained by DC SERVICES in the ordinary course of DC SERVICES' business. Any such document was prepared in the ordinary course of business of DC SERVICES by a person who had personal knowledge of the event being recorded and had or has a business duty to accurately record such events. I am personally responsible for the handling of all collection activity in connection with the account of Debtors and I have reviewed all of DC SERVICES' books and records in connection with this matter. I have personal knowledge of the facts contained herein and if called upon to testify, I could and would competently testify thereto.

2. On December 30, 2004, Debtors entered into a Credit Sale Contract, Security Agreement, Financing Statement and Disclosures ("Contract") for the purchase of a 2005 Chrysler Town & Country, VIN 2C8GP44R25R181768 (the "Vehicle"). The Contract was subsequently assigned to DC SERVICES in the normal course of DC SERVICES' business. True and correct copies of the

620591.01

2

Contract and the duly recorded Certificate of Title evidencing DC SERVICES' perfected interest in the Vehicle are attached hereto as Exhibits "A" and "B" respectively.

3. Attached hereto as Exhibit "C" are true and correct copies of the Kelley Blue Book online valuation report which indicates the Vehicle's suggested retail value of $9,565.

4. DC SERVICES regularly relies upon the Kelley Blue Book in estimating values of vehicles in the normal course of its business.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this Declaration was executed _February 24th_, 2009 at _2:20 pm_.

_____
SEAN WATRIPONT

620591.01

3

FOR FILING OFFICER

1004608883

## CREDIT SALE CONTRACT, SECURITY AGREEMENT, FINANCING STATEMENT AND DISCLOSURES — DEALER — INTEREST TO FOLLOW

| Customer Number | Contract Number | Face Amount | Contract Date (Mo. Da. Yr.) | Maturity Date (Mo. Da. Yr.) | Buyer's Home Phone | Buyer's Business Phone |
|---|---|---|---|---|---|---|
| 1736079 | 292151 | $31078.80 | 12/30/2004 | 01/11/2010 | (719)227-0974 | (719)666-9236 |

| Buyer Name, Address, Zip Code | Seller/Secured Party Name, Address, Zip Code |
|---|---|
| DEAN MARK SR<br>SUZANNE E MARK<br>2208 N CHELTON RD<br>COLORADO SPRINGS CO 80909 | JOHN ELWAY CHRY-JEEP WEST<br>16300 W. COLFAX AVE.<br>GOLDEN, CO 80401 |

### DISCLOSURE

JAN 1 0 2005

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 2750.02 |
|---|---|---|---|---|
| 0.0 % | $ 0.00 | $ 31078.80 | $ 31078.80 | $ 33828.82 |

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $517.98 | MONTHLY BEGINNING- 02/11/2005 AND WILL BE DUE MONTHLY ON THE 11TH DAY THEREAFTER |

Insurance — Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign; or initial, and agree to pay the additional cost.

| Type | Premium and Term | Signature |
|---|---|---|
| Credit Life | N/A | I want credit life insurance _____ Signature/Initial |
| Credit Disability | N/A | I want credit disability insurance _____ Signature/Initial |
| Credit Life and Disability | N/A | I want credit life and disability insurance _____ Signature/Initial |

You may obtain property insurance from anyone you want that is acceptable to the Seller. If you obtain the insurance from the Seller, you will pay $ N/A.

Security: You are giving a security interest in [X] the goods or property being purchased.

[ ] (brief description of other property): _____

Filing Fees: $ 19.50     Late Charge: If a payment is more than 10 days late, you will be charged $15.00.

Prepayment: If you pay off early, you may be charged a minimum finance charge.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

e means an estimate

The following applies if checked:

[ ] THIS CONTRACT DOES NOT PROVIDE FOR AUTOMOBILE LIABILITY INSURANCE, AND SAID BUYER ALSO STATES THAT HE OR SHE HAS / HAS NOT (STRIKE WORDS NOT APPLICABLE) IN EFFECT AN AUTOMOBILE LIABILITY POLICY AS DEFINED IN SECTION 42-7-103 (3), COLORADO REVISED STATUTES, ON THE MOTOR VEHICLE SOLD BY THIS CONTRACT.

[X] This contract will be assigned to, and payments should be made to:
DC SERVICES N.A. LLC
POB 4317        ENGLEWOOD CO 80155

See reverse side for Notices to Buyer, letters and assignors.

### ITEMIZATION OF AMOUNT FINANCED

1. $ 28610.57  cash price (including tax of $ 1197.57 )
2. $ 2750.02   cash down payment/rebate
3. $ 0.00      trade-in ($0 if loan payoff exceeds trade-in value in 5(b) below)
4. $ 25860.55  Unpaid balance of cash price (add 2 & 3 then subtract from 1)
5. Amounts paid to others on your behalf:
   a. $ 19.50     filing fees to Public Officials
   b. $ 4399.75   FMCC
      for payoff of excess of existing loan over trade-in value
      $ 9000.00   trade-in value
      $ 13399.75  payoff balance on existing loan
   c. $ N/A       to insurance companies*
   d. $ N/A       to _____
   $ 4419.25      Total of 5a through 5d
   e. $ 299.00    DEALER- DOC FEE
7. $ 500.00    GAP
8. $ 31078.80  Amount Financed (4, 5, 6 & 7)

*Seller may retain a portion of this amount.

### CONTRACT AND PROMISE TO PAY

The terms Buyer, Seller, Payment Schedule, Amount Financed, Contract Date, Annual Percentage Rate and Maturity Date refer to the like terms and corresponding names or amounts as disclosed above. Buyer agrees to purchase from Seller, on the terms set forth in this Credit Sale Contract and Security Agreement, the property described below in the security agreement. Buyer, jointly and severally if more than one, promises to pay to the order of the Seller, or its assignee, at the address shown above, or as otherwise instructed, and in accordance with the Payment Schedule, the Amount Financed with interest on the unpaid balance from the Contract Date at the Annual Percentage Rate. Unless sooner paid, the entire balance of the Amount Financed and interest thereon shall be due on the Maturity Date. In any event, even upon full prepayment of this contract, the Seller is entitled to a minimum Finance Charge (inclusive of earned Finance Charge) of $15.00. Partial prepayments shall not excuse or postpone subsequent installments. Interest as provided above will continue in effect after default and after judgment and until all amounts until date of judgment are paid in full. A fee of $25.00 will be assessed upon return or dishonor of a check or other instrument tendered as payment.

At the option of the holder of this contract ("holder"), the unpaid balance of this contract and all other obligations of Buyer to the holder, direct or indirect, absolute or contingent, now existing or hereafter arising, may, subject to the provisions of Section 5-5-111 of the Colorado Uniform Consumer Credit Code (UCCC), become immediately due and payable without notice or demand if (a) any payment required by this contract is not made when due, or (b) a default or event of default occurs under any contract or security agreement or other instrument executed as security for or in connection with this contract, or (c) the Buyer or any of them shall die, or (d) the holder at any time in good faith believes that the prospect of any payment required by this contract is impaired, whether or not such belief is caused by any act of failure to act of any Buyer or of any guarantor of this contract (hereinafter referred to as "any other signer").

Buyer and any other signer waive presentment, notice of dishonor and protest and assent to any extension of time with respect to any payment due under this contract, to any substitution or release of collateral and to the addition or release of any party. No waiver of any payment or other right under this contract shall operate as a waiver of any other payment or right. If the holder enforces this contract upon default, Buyer any other signer shall pay, or reimburse the holder for, (a) reasonable expenses incurred in realizing on any Security Interest, and (b) if referred to an attorney not a salaried employee of the holder, reasonable attorney's fees not in excess of 15% of the unpaid debt after default, or, if allowed by the UCCC, such additional fees as may be directed by the Court.

This contract (a) is secured by the property described in the security agreement and (b) shall be construed under and governed by the laws of the State of Colorado. If there is more than one Buyer, all of the provisions of this contract shall apply to each and any of them.

Buyer represents that the primary purpose of this transaction is PERSONAL
(Personal, family, household, investment, agricultural, or business)

If any payment is not paid in full within 10 days after its scheduled due date, Buyer will pay a delinquency charge of $15.00, and Seller shall notify Buyer of the delinquency charge assessed, as set forth in Section 5-2-203(4), C.R.S.

### SECURITY AGREEMENT

To secure the payment of the foregoing contract and any and all liabilities, direct, indirect, absolute, contingent, due or to become due, now existing or hereafter arising (all hereinafter sometimes called "Obligations") of the Buyer, or any of them, to the Secured Party, the Buyer grants to the Secured Party a security interest in the following property and any and all additions, accessions, substitutions, repairs, replacements thereto and proceeds thereof, sometimes called "Collateral":

New 2005 Chrysler T+C        2005 CHRYSLER T+C

12/30/2004        JOHN ELWAY CHRY-JEEP WEST

By signing this Credit Sale Contract and Security Agreement the Buyer agrees to all of the terms on the front and reverse side hereof and acknowledges receipt of a copy hereof with all applicable blanks filled in.

12/30/2004        12/30/2004

Buyer's Signature(s)  [signed] Dean Mark 12/30/04
                      [signed] Suzanne E Mark 12/30/04

Seller/Secured Party By: [signed]    DEAL NUMBER 29215  STOCK NUMBER 5R181768

No. 6493. Rev. 8-01. CREDIT SALE CONTRACT, SECUR...

EXHIBIT "A"

## ADDITIONAL PROVISIONS

**FURTHER WARRANTIES AND COVENANTS OF THE BUYER.** The Buyer hereby warrants and covenants that:

1. Except for the security interest granted hereby, the Buyer is the owner of the Collateral free from any prior lien, security interest or encumbrance; and the Buyer will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein.

2. The Buyer will not sell or offer to sell or otherwise transfer or encumber the Collateral or any interest therein without the prior written consent of the Secured Party. The Collateral will be located at and kept at Buyer's address shown on the reverse side hereof and shall not be removed from the State of Colorado without the prior written consent of the Secured Party.

3. The Buyer will immediately notify the Secured Party in writing of any change in address from that shown in this agreement and will also upon demand furnish to the Secured Party such further information and will execute and deliver to the Secured Party such financing statements, mortgages and other papers and will do all such acts and things as the Secured Party may at any time or from time to time reasonably request and/or as may be necessary or appropriate to establish and maintain a valid security interest in the Collateral as security for the Obligation, subject to no prior liens or encumbrances.

4. The Buyer will keep the Collateral at all times insured against risks of loss or damage by fire (including so-called extended coverage), theft and such other casualties as the Secured Party may reasonably require, all in such amounts, under such forms of policies, upon such terms, for such periods and written by such companies or underwriters as the Secured Party may approve, losses in all cases to be payable to the Secured Party and the Buyer as their interest may appear. All policies of insurance shall provide for at least ten days prior written notice of cancellation to the Secured Party; and the Buyer shall furnish the Secured Party with certificates of such insurance or other evidence satisfactory to the Secured Party as to compliance with the provisions of this paragraph. The Secured Party may act as attorney for the Buyer in making, adjusting and settling claims under or cancelling such insurance and endorsing the Buyer's name on any drafts drawn by insurers of the Collateral.

5. The Buyer will keep the Collateral free from any adverse lien, security interest or encumbrance and in good order and repair, will not waste or destroy the Collateral or any part thereof and will not use the Collateral in violation of any applicable statute, ordinance or policy of insurance thereon. The Secured Party may examine and inspect the Collateral at any reasonable time or times wherever located.

6. The Buyer will pay promptly when due all taxes and assessments upon the Collateral or for its use or operation.

**ADDITIONAL RIGHTS OF PARTIES.** At its option, but without obligation to do so, the Secured Party may: (1) discharge taxes, liens, or security interests or other encumbrances at any time levied or placed on the Collateral; (2) place and pay for insurance on Collateral in the event Buyer fails to keep the Collateral insured and order and pay for the repair, maintenance and preservation of the Collateral; (3) pay any fees and charges necessary to determine the existence of or to perfect, release or satisfy any security related hereto; and (4) pay for license, certificate of title or registration fees. The Buyer agrees to reimburse the Secured Party on demand for any payment made or any expense incurred by the Secured Party pursuant to the foregoing authorization. Until default the Buyer may have possession of the Collateral and use the same in any lawful manner not inconsistent with this Agreement.

**EVENTS OF DEFAULT — REMEDIES.** Upon the happening of any of the following events or conditions, namely: (i) default in the payment or performance of any of the Obligations or of any covenant or liability contained or referred to herein or in any agreement evidencing any of the Obligations; (ii) any warranty, representation or statement made or furnished to the Secured Party by or on behalf of the Buyer in connection with this agreement proving to have been false in any material respect when made or furnished; (iii) loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon; (iv) death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver of any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceedings under any bankruptcy or insolvency laws by, against or of Buyer or any guarantor or surety for the Buyer, thereupon, or at any time thereafter (such default not having previously been cured), the Secured Party at its option may declare all of the Obligations to be immediately due and payable, subject to any notice required by law or agreement, and shall then have the remedies of a Secured Party under the Uniform Commercial Code of Colorado, or other applicable law, including, without limitation thereto; the right to take possession of the Collateral, and anything found therein; and for that purpose may pursue the Collateral wherever the same may be found and with or without legal process, but without a breach of the peace (a breach of the peace includes, but is not limited to, entering a locked or unlocked residence or residential garage, breaking, opening or moving any lock, gate or other barrier to enter enclosed real property, without the contemporaneous permission of the debtor, as further set forth in § 4-9-601, C.R.S.) may enter the premises where the Collateral may be found and take possession thereof and remove the same (subject to any applicable limitations including § 4-9-609, C.R.S. regarding manufactured homes and trailer coaches). In the event the Secured Party institutes legal proceedings to regain possession of the Collateral, Buyer knowingly and voluntarily waives his or her right to a hearing prior to losing possession of the Collateral by means of a court order, and agrees that the Secured Party may obtain an order for possession prior to hearing as provided in C.R.C.P. 104(d)(4).

Borrower hereby waives all right of homestead exemption in the Collateral, including that granted by § 38-41-201.6, C.R.S., and waives any other statutory exemptions, including those granted by §13-54-102, C.R.S., insofar as such exemptions pertain to the Collateral described in this Security Agreement.

The Secured Party may require the Buyer to make the Collateral available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient to both parties. Unless the Collateral is perishable or the Secured Party in good faith believes that the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Secured Party will send a reasonable authenticated notification of disposition as provided in §§ 4-9-611 to 614, C.R.S., as applicable. Expenses of retaking, holding, preparing for sale, selling or the like shall, subject to UCCC limits if applicable, include the Secured Party's reasonable attorney's fees and reasonable legal expenses.

**GENERAL.** This agreement and the security interest in the Collateral created hereby shall terminate when the Obligation has been paid in full. No waiver by the Secured Party of any default shall be effective unless in writing nor operate as a waiver of any other default or of the same default on a future occasion. All rights of the Secured Party hereunder shall inure to the benefit of its successors and assigns; and all obligations of the Buyer shall bind the heirs, legal representatives, successors and assigns of the Buyer. If there be more than one Buyer, their obligations hereunder shall be joint and several. This agreement shall take effect when signed by the parties hereto. This agreement shall be construed under and governed by the laws of Colorado.

Should any provision of this Credit Sale Contract, Security Agreement, Financing Statement and Disclosures violate any federal, state or local law or ordinance, that provision shall be deemed amended to so comply with such law or ordinance, and shall be construed in a manner so as to comply.

---

**NOTICE — If this sale is for a used motor vehicle:**
THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

---

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

IF THIS TRANSACTION CONTAINS A FEE OR PREMIUM FOR GUARANTEED AUTOMOBILE PROTECTION, ALL HOLDERS AND ASSIGNEES OF THIS CONSUMER CREDIT TRANSACTION ARE SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE ORIGINAL CREDITOR RESULTING FROM THE DEBTOR'S PURCHASE OF GUARANTEED AUTOMOBILE PROTECTION.

---

**ASSIGNMENT**

For value received, the within Credit Sale Contract and Security Agreement and all the right, title and interest of the undersigned therein and thereunder, and the property therein described and secured are hereby sold, transferred, conveyed and assigned to

**DC SERVICES NA LLC**

its successors and assigns, with full authority to do every act and thing necessary to collect and discharge same. The undersigned expressly warrants that the within Security Agreement arose from the bona fide time sale to Buyer, grantor of the security interest in the property described therein and secured hereby, that the title to said property at the time of said sale was vested in the undersigned free and clear of all liens and encumbrances, that the undersigned had the legal right to and did properly assign and deliver such title as well as said property to Buyer at the time of the sale thereof, that said property was not misrepresented in any way to Buyer, and that the statements of Buyer in his credit statement are true to the best of the knowledge and belief of the undersigned. The undersigned further warrants that the Collateral is free and clear of all claims, liens and encumbrances whatsoever, except the within security interest, that the Security Agreement is genuine and in all respects what it purports to be, that the undersigned is the owner of said Credit Sale Contract and Security Agreement and has the right to sell and assign same, THAT BUYER VOLUNTARILY PURCHASED SAID PROPERTY FOR THE TOTAL SALE PRICE RATHER THAN FOR THE CASH PRICE, that the down payment received as mentioned was paid in full by the Buyer in cash and/or trade-in as stated herein, that the Buyer is of lawful age and competency, that the property is correctly described therein, that the signature(s) of the Buyer(s) is (are) genuine; and that the undersigned has made all disclosures and given all notices required by the Federal Consumer Credit Protection Act. The undersigned further warrants that this Obligation of the borrower did not arise from a referral sale or a home solicitation sale.

In the event any of the above warranties are held to be false, causing monetary loss to the assignee, the undersigned agrees to save harmless the assignee herein and to pay all attorney's fees and other costs incurred by said assignee in enforcing said warranties against the undersigned.

Dated: 12/30/04

JOHN ELWAY CHRY JEEP WEST
— Secured Party (Seller)

[signature]
Authorized Signature

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER.

**STATE OF COLORADO**
**CERTIFICATE OF TITLE**
****MOTOR VEHICLE****

TITLE NUMBER: 1004668883 / 04T943119

| VIN | YEAR | MAKE | BODY/CWT/CAP/SIZE | ODOMETER |
|---|---|---|---|---|
| 2C8GP44R25R181768 | 2005 | CHR | PV  42 | 45 A |

| TAXABLE VALUE | PREVIOUS TITLE | FUEL |
|---|---|---|
| 24,229 | MSO | G |

ODOMETER LEGEND:
A - Actual Mileage
E - In excess of mechanical limits
N - Not actual mileage; WARNING- ODOMETER DISCREPANCY

| DATE PURCHASED | DATE ACCEPTED | DATE ISSUED |
|---|---|---|
| 12/30/2004 | 02/04/2005 | 02/25/2005 |

**MAIL TO**
DC SERVICES NA LLC
PO BOX 4317
ENGLEWOOD    CO 80155

**OWNER** — JTWROS
MARK DEAN SR
MARK SUZANNE E

**FIRST LIENHOLDER**
DC SERVICES NA LLC
PO BOX 4317
ENGLEWOOD    CO 80155

FILE NUMBER: 250403361
DATE FILED: 02/04/2005

Signature below certifies under penalty of perjury in the second degree the release of the first lienholder's interest in the vehicle.
Lienholder's Name _____
Authorized Agent Signature _____ Date _____

| AMOUNT OF LIEN | LIEN EXTENDED TO | CO. NO. | MATURITY DATE |
|---|---|---|---|
| 31,078.80 | | | 02/04/2013 |

**SECOND LIENHOLDER**

FILE NUMBER:
DATE FILED:

Signature below certifies under penalty of perjury in the second degree the release of the second lienholder's interest in the vehicle.
Lienholder's Name _____
Authorized Agent Signature _____ Date _____

AMOUNT OF LIEN   LIEN EXTENDED TO   CO. NO.   MATURITY DATE

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED, SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

05052389413Vjfb
EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE
M. MICHAEL COOKE

DATE DUPLICATE ISSUED

CONTROL NO.
**F2396717**
(This is not a title number)

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE     DR-2001 (6/00)

**VOID IF ALTERED**

EXHIBIT "B"





 **Don't Buy a Used Car Without CARFAX** 

## 2005 Chrysler Town & Country LX Minivan

### BLUE BOOK® SUGGESTED RETAIL VALUE



| | Condition | Value |
|---|---|---|
| ✓ | **Excellent** (Selected) | **$9,565** |

**Suggested Retail Value Assumes Excellent Condition...**
More

### Vehicle Highlights

| | |
|---|---|
| Mileage: | 65,000 |
| Engine: | V6 3.3 Liter |
| Transmission: | Automatic |
| Drivetrain: | FWD |

### Selected Equipment
**Standard**

| | | |
|---|---|---|
| 7 Passenger | Tilt Wheel | Dual Front Air Bags |
| Air Conditioning | Cruise Control | ABS (4-Wheel) |
| Power Steering | AM/FM Stereo | Quad Seating |
| Power Windows | Cassette | |
| Power Door Locks | Single Compact Disc | |

### Blue Book Suggested Retail Value

The Kelley Blue Book Suggested Retail Value is representative of dealers' asking prices and is the starting point for negotiation between a consumer and a dealer. This Suggested Retail Value assumes that the vehicle has been fully reconditioned and has a clean title history. This value also takes into account the dealers' profit, costs for advertising, sales commissions and other costs of doing business. The final sale price will likely be less depending on the vehicle's actual condition, popularity, type of warranty offered and local market conditions.

### Vehicle Condition Ratings

✓ **Excellent** (Selected)

☐☐☐☐☐ **$9,565**

- Looks new, is in excellent mechanical condition and needs no reconditioning.
- Never had any paint or body work and is free of rust.
- Clean title history and will pass a smog and safety inspection.
- Engine compartment is clean, with no fluid leaks and is free of any wear or visible defects.
- Complete and verifiable service records.

Less than 5% of all used vehicles fall into this category.

EXHIBIT "C"